UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JANICE WALTMAN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.: |
| | § | |
| HEALTHCARE SERVICES GROUP, INC. | § | JURY REQUESTED |
| | § | |
| Defendant. | § | |

## ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW **JANICE WALTMAN,** Plaintiff in the above entitled and numbered cause, complaining of **HEALTHCARE SERVICES GROUP, INC.** and files this Original Complaint and Demand for Jury Trial, and in support thereof respectfully show the Court as follows:

### I.

### PARTIES

1. Plaintiff Janice Waltman ("Waltman") is an individual who is a citizen of the State of Texas and resides in Bowie County, Texas.

2. Defendant Healthcare Services Group, Inc. ("HC Services") is a foreign corporation doing business in Texas. HC Services can be served with process upon its registered agent: Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

### II.

### JURISDICTION

3. The Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because the claims arise under Title VII of the Civil Rights Act of 1964 ("Title VII"), as

amended (42 U.S.C. §§ 2000e *et seq.*), as well as supplemental jurisdiction under 28 U.S.C. § 1367.

### III.
### VENUE

4.      Venue of this action is governed by 28 U.S.C. § 1391 and is proper in the Eastern District of Texas because Waltman was employed by HC Services in Bowie County, Texas and the incidents giving rise to this lawsuit occurred in Bowie County, Texas.

### IV.
### EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      On June 25, 2012, Waltman timely filed/initiated a Charge with the Equal Employment Opportunity Commission (the "EEOC") a Charge of Discrimination against HC Services Group, Inc. as required under Title VII and/or the Texas Commission on Human Rights Act ("TCHRA").

6.      On November 12, 2013, the EEOC issued its Notice of Right to Sue on Waltman's Charge of Discrimination.  Attached hereto as Exhibit "A" and fully incorporated herein for all purposes is a true and correct copy of the Dismissal and Notice of Rights.

### V.
### FACTUAL BACKGROUND

7.      Janice Waltman was hired by New Boston Nursing Center on May 1, 2009.  She was hired to work in the Housekeeping/Laundry Department.  New Boston Nursing Center is a nursing home facility for the elderly located in New Boston Texas in Bowie County.  Initially she was hired on a PRN (as needed) basis.  However, within three months, Waltman was promoted to a full time supervisor.

8.      On or about August 1, 2011 New Boston Nursing Center decided to outsource its Housekeeping/Laundry Department.   HC Services Group, Inc. is a staffing company that

provides housekeeping/laundry and dining/nutrition services in the healthcare industry. New Boston Nursing Center contracted with HC Services Group, Inc. to provide its Housekeeping/Laundry Services and Floor Tech beginning on August 1, 2011.

9. HC Services Group hired Waltman with the purpose of assigning her to the New Boston Nursing Center as she was familiar with the facility and role. On August 1, 2011 Waltman became an HC Services Group, Inc. employee. HC Services Group, Inc. assigned Waltman to the New Boston Nursing Center. HC Services Group, Inc. promoted Waltman to Account Manager. In her new role she continued to be a supervisor in the Housekeeping/Laundry Department of the New Boston Nursing Center and directly reported to the District Manager, Howard Judd. Judd was also a HC Services Group employee and was assigned to the New Boston facility.

10. On or about March 7, 2012 Waltman was working on an all-night project. At approximately 10:00 p.m. she and Judd went outside to take a break. There were three New Boston residents present when a conversation ensued. The three residents present with Waltman and Judd during the break were Linda Shuler, Kivey Dole and Donald Griggs.

11. During the break the five of them were engaged in conversation. At some point the topic of the conversation turned to the City of Dallas. Judd then began to talk about a time that he and a friend of his named Gary went "clubbing" and "partying" in Dallas. Specifically, he stated that he and Gary went to a club where there were two female bartenders. Judd stated Gary asked the female bartenders to take their shirts off. The bartenders responded that they would take their shirts off if he took his pants off.

12. Judd then told Waltman, Shuler, Dole and Griggs that the bartenders took their shirts off and then one of the bartenders jerked his friend Gary's pants down. Judd then stated that Gary's "dick hung to his knees" and the girls (bartenders) said they "couldn't handle something that big." Waltman and the residents were shocked and in disbelief.

**ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL – Page 3**

13. Judd, however, continued with his stories of Dallas. Judd then told Waltman and the New Boston residents about a time when he went to a strip club in Dallas to visit a female stripper that was a friend of his. Judd told them that his friend asked him to start putting money on stage when she started dancing so other customers would do the same. Judd told Waltman and the New Boston residents that when his stripper friend got up to dance, he had a pocket full of quarters and that he told her to pull that "pussy open and starting putting quarters in the slot".

14. Waltman was offended. She shook her head and let Judd know his comments and stories were not welcomed. The residents' reactions an demeanor also demonstrated they were offended. Waltman got up and left. Waltman was forced to work with Judd the remainder of her evening. However, Waltman did not engage Judd in any personal conversations the rest of the evening.

15. On March 8, 2012 Waltman called and reported Judd's inappropriate behavior to Crystal Hodge, the training manager for HC Services Group. Hodge could not believe it. Waltman also called Michael Mitchell and left a message to call her. Mitchell never returned the call.

16. That same day she went to report Mr. Judd's behavior to Emmit Reiner. Mr. Reiner, a New Boston HR employee, was on vacation. Waltman was not able to speak to him but met with Tanji Carr, New Boston's Director of Nursing, and Shonte (last name unknown), Assistant Director of Nursing. Waltman reported Judd's behavior and comments to Carr and Shonte. Both expressed shock and concern and stated they would take appropriate action.

17. The New Boston Residents also made a complaint against Judd for the inappropriate sexual comments made in front of Waltman and the New Boston Residents on March 7, 2012.

18. On or about March 16, 2012 Waltman gave a statement in support of the complaints made by her and the New Boston residents regarding Judd. Her statement recounted the events and the statements made by Judd that evening.

19. As a result from Waltman's and the residents' reports, Judd was banned from the New Boston premises and all Nexion facilities.

20. On March 20, 2012 Waltman reported to work at New Boston as usual. That day, however, she had issues with the time clock. She immediately called and reported the issue. Waltman spoke to Michael Mitchell who informed her he would call her back. She also called Crystal Hodge. Hodge attempted to walk Waltman through the issue by giving her some codes to punch into the system. Hodge was unable to assist Waltman and they were unable to resolve the time clock issues.

21. Waltman noted her time and began her duties for the day. It was not uncommon to have issues with the time clock. When this occurred, the practice was to notify someone and make efforts to correct or fix the time clock. If the time clock could not be corrected or fixed, the practice was to notify someone, write your time down and wait for the time clock to be fixed at which time the time entry would be adjusted to reflect the correct time of the "punch in" or "punch out" time. Waltman followed this procedure.

22. At approximately 8:30 a.m. Waltman received a call on her cell phone from Judd. He was apparently upset and informed Waltman she had a "missed punch" that morning. Waltman stated she was aware of the "missed punch". Judd asked Waltman where she was. Waltman informed Judd that she was located in Hall 1 and was buffing the floors. Judd instructed her to get to the time clock. Waltman stated "I'll be right there, let me put the buffer up." Waltman did as instructed, stayed on the line, put up the buffer and immediately went to the time clock. When she got to the time clock she informed Judd, "I'm here."

23. Waltman then began to explain the efforts she and Crystal had made earlier when Judd began yelled at her to "shut the hell up, I don't want to hear your riff raff!"  Prior to reporting the sexual harassment, Judd had not made such an issue about a missed punch. Waltman hung up with Judd and went back to work.

24. On March 21, 2012 Judd was at New Boston Nursing Center fixing the time clock when Waltman arrived at work.  Judd asked Waltman why she hung up on him. Waltman informed Judd she felt it was probably for the best under the circumstances.  Judd eventually fixed the time clock and Waltman's missed punch without further issue.

25. On March 27, 2012 Judd terminated Waltman.  He stated he was terminating her for hanging up on him while he was trying to help her with the time clock and for leaving the premises.  None of these reasons were true.

26. Waltman was terminated in retaliation for reporting sexual harassment.

## VI.

## COUNT ONE

## DISCRIMINATION UNDER TITLE VII

27. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

28. Waltman will show that HC Services committed an unlawful employment practice in violation of Title VII by subjecting her to unlawful sexual harassment.  Specifically, Waltman was subjected to severe and pervasive sexual harassment by one of her coworkers, which created a hostile and abusive work environment.  HC Services knew of the unlawful sexual harassment, but failed to investigate or take prompt remedial action to stop the harassment.

29. As a direct and proximate result of HC Services conduct as set forth herein,

Waltman has suffered actual and compensatory damages, including, but not limited to, lost wages, loss of benefits and loss of enjoyment of life, including emotional pain, suffering, inconvenience, and mental anguish, in an amount within the jurisdictional limits of this Court.

30. Waltman will further show that HC Services conduct as alleged herein was intentional and HC Services acted with malice and/or reckless indifference entitling Waltman to compensatory and punitive damages as allowed by Title VII.

## VII.

## COUNT TWO

## RETALIATION UNDER TITLE VII

31. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

32. Waltman will show that HC Services committed an unlawful employment practice in violation of Title VII by retaliating against her because she complained of unlawful sexual harassment. Waltman was subjected to severe and pervasive sexual harassment by one of her coworkers, which she complained of and reported to HC Services. HC Services failed to investigate or take prompt remedial action to stop the harassment; instead, HC Services retaliated against Waltman by terminating her after she complained about the sexual harassment.

33. As a direct and proximate result of HC Services conduct as set forth herein, Waltman has suffered actual and compensatory damages, including, but not limited to, lost wages, loss of benefits and loss of enjoyment of life, including emotional pain, suffering, inconvenience, and mental anguish, in an amount within the jurisdictional limits of this Court.

34. Waltman will further show that HC Services conduct as alleged herein was intentional and HC Services acted with malice and/or reckless indifference entitling Waltman to compensatory and punitive damages as allowed by Title VII.

## VIII.

## COUNT THREE

### DISCRIMINATION AND RETALIATION UNDER CHAPTER 21 OF THE TEXAS LABOR CODE

35. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

36. The discrimination and retaliation alleged in Counts One and Two above also constitute willful, knowing, and intentional violations of the Chapter 21 of the Texas Labor Code (TEX. LAB. CODE § 21.001 *et seq.*).

37. As a direct and proximate result of HC Services conduct as set forth herein, Waltman has suffered actual and compensatory damages, including, but not limited to, lost wages, loss of benefits and loss of enjoyment of life, including emotional pain, suffering, inconvenience, and mental anguish, in an amount within the jurisdictional limits of this Court. Waltman will show that HC Services conduct as alleged herein was intentional and that HC Services acted with malice and/or reckless indifference entitling Waltman to compensatory and punitive damages as well as any additional damages to the extent provided under the Texas Labor Code.

## IX.

### ATTORNEYS' FEES AND COSTS

38. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

39. In addition to actual, compensatory, and punitive damages, Waltman seeks to recover her reasonable and necessary attorneys' fees and costs, including reasonable expert witness fees, as permitted under Title VII and Section 21.259 of the Texas Labor Code.

## X.

## CONDITIONS PRECEDENT

40. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

41. Waltman has met all conditions precedent to her lawful recovery herein.

## XI.

## JURY DEMAND

42. Waltman requests a jury trial.

## XII.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Waltman respectfully prays that HC Services Group, Inc. be cited to appear and answer herein and that upon final hearing, Waltman have and recover from HC Services Group, Inc. as follows:

 a. Actual damages;

 b. Back pay and front pay within the jurisdictional limits of the Court;

 c. Compensation for loss of employee benefits, including, but not limited to, medical, dental, life, 401(k), pension, and retirement benefits;

 d. Additional compensatory damages for Waltman's mental anguish, pain, and suffering;

 e. Additional punitive and exemplary damages;

 f. Pre- and post-judgment interest at the highest rates allowed by law;

 g. All reasonable and necessary attorneys' fees incurred as specified herein;

 h. All costs of court; and

 i. Such other and further relief, at law or in equity, to which Waltman is justly entitled.

Respectfully Submitted,

_____
**NELLIE G. HOOPER**
State Bar No. 00798211
**JEFFREY D. SMITH**
State Bar No. 24063008
**BLANSCET HOOPER & HALE, L.L.P.**
14285 Midway Road, Suite 400
Addison, Texas 75001
(214) 764-7977
(214) 764-7981 (Telecopy)
nhooper@metrocrestlaw.com
jsmith@metrocrestlaw.com

And

**DOROTHA M. OCKER**
State Bar No. 24076597
**OCKER LAW FIRM, P.L.L.C.**
2340 E. Trinity Mills Road, Suite 300
Carrollton, Texas 75006
(214) 390-5715
(469) 277-3365 (Telecopy)
dmo@ockerlawfirm.com

**ATTORNEYS FOR PLAINTIFF
JANICE WALTMAN**